800 A.2d 147 (2002)
352 N.J. Super. 269
MAYER POLLOCK STEEL CORPORATION, Plaintiff-Appellant,
v.
NEW JERSEY SURPLUS LINES INSURANCE GUARANTY FUND, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 2002.
Decided June 13, 2002.
Jonathan B. Freedman, Cherry Hill, argued the cause for appellants (Paul & Miller, attorneys; Andrew L. Miller, of counsel and on the brief).
*148 Mark M. Tallmadge, Florham Park, argued the cause for respondent (Bressler, Amery & Ross, attorneys; Mr. Tallmadge and Stephanie M. Hopkins, on the brief).
Before Judges HAVEY, COBURN and WEISSBARD.
The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiff Mayer Pollock Steel Corporation appeals from a summary judgment in favor of defendant New Jersey Surplus Lines Insurance Guaranty Fund (Fund). On appeal, plaintiff argues that the trial court erred in concluding that the general liability policy, under which it is the named insured, was issued by the London Market Insurance Exchange (Lloyd's), rather than Anglo American Company Limited (Anglo American). Plaintiff also argues that the court erred in concluding that plaintiff was not eligible to recover from the Fund because its claim was not a "covered claim" under the New Jersey Surplus Lines Insurance Guaranty Fund Act, N.J.S.A. 17:22-6.70 to -6.83, since Lloyd's was an insurance exchange, and insurance exchanges are not eligible to participate in the Fund. Finally, plaintiff contends that, "[f]or purposes of determining whether there exists a `covered claim,' the `claimant' is Jack Labrutto, not Mayer Pollock." We affirm. We agree with the trial court that the policy was issued by Lloyd's, which was not eligible to participate in the Fund.
In March 1999, plaintiff, a Pennsylvania corporation, settled a personal injury action instituted by Jack Labrutto for injuries arising out of a January 5, 1994 accident. The total settlement amount was $125,000. At the time Labrutto was injured, plaintiff was insured under a general liability policy issued through Lloyd's. The policy consists of three parts. The third part is a "Companies Collective Policy," accounting for sixty-five percent of the coverage risk, which was assumed by Anglo American, a London-based insurer. Anglo American was an eligible surplus lines insurer in New Jersey until October 1994, when its eligibility was withdrawn by the Commissioner of Banking and Insurance.
On April 5, 1999, Anglo American was declared insolvent by order of the Commissioner. The order directed the Fund to "immediately begin payment in the amount of one hundred percent on all Anglo American covered claims in accordance with N.J.S.A. 17:22-6.74(a)." Accordingly, plaintiff instituted this action against the Fund seeking recovery of $35,375 from the Fund to recoup the net portion of the $125,000 settlement it paid to Labrutto.
In granting summary judgment to the Fund, the trial court concluded that Lloyd's issued the policy in question to plaintiff; Lloyd's is an "insurance exchange"; and plaintiff did not have a "covered claim" because an insurance exchange cannot participate in the Fund.
In order to remedy the exclusion of surplus lines insurers from coverage under the New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 to -20, the Legislature, in 1984, enacted the New Jersey Surplus Lines Insurance Guaranty Fund Act (Act), N.J.S.A. 17:22-6.70 to -6.83. The Act created a fund to pay covered claims under policies issued by eligible, but insolvent surplus lines insurers. See Banking & Ins. Comm., Introductory Statement to Assembly Bill No. 2273 (1984). Under the Act, the Fund is legally obligated to pay a "covered claim," which is defined as follows:
"Covered claim" means an unpaid claim, including a claim for unearned *149 premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, and which was issued by a surplus lines insurer which was eligible to transact insurance business in this State at the time the policy was issued and which has been determined to be an insolvent insurer on or after June 1, 1984, if (1) the claimant or policyholder is a resident of this State at the time of the occurrence of the insured event for which a claim has been made, or (2) the property from which the claim arises is permanently located in this State.

[N.J.S.A. 17:22-6.72b (emphasis added).]
A related statute, the New Jersey Surplus Lines Law, N.J.S.A. 17:22-6.40 to -6.67, provides that statutory benefits payable by the Fund under the Act are not available to insureds whose policies are issued by an "insurance exchange." Specifically, N.J.S.A. 17:22-6.45d(1) provides in part that:

No insurance exchange approved as an eligible insurer by the commissioner shall be a member of the New Jersey Surplus Lines Insurance Guaranty Fund created pursuant to [N.J.S.A. 17:22-6.70 et seq.] nor shall any claim against an exchange be deemed to be a covered claim pursuant to the provision of that act[.]

[Emphasis added.]
We agree with the trial court that the policy issued to plaintiff was issued by Lloyd's, not Anglo American. The policy is entitled "Lloyd's Policy," and was procured through the London Market. Indeed, in correspondence dated October 2, 1997 to the court, plaintiff's counsel acknowledged that plaintiff was insured under a "general liability policy issued by Lloyd's of London," and that "Anglo American Insurance Company participated in that policy for 65% of the limit of liability." (Emphasis added). Under the "Lloyd's Policy," the "Underwriting Members" of the "syndicates" identified in the policy, agree, in consideration of the premiums paid, to "insure against losses" as defined by the policy. Anglo American was one of three subscribers who agreed to cover a percentage of the risk. Thus, there is no question that Anglo American was a subscriber to and not the issuer of the policy. The Fund persuasively argues that, to assume that Anglo American and the other subscribers had "issued" separate policies would essentially negate the statutory preclusion of insurance exchange participation in the Fund, since "no insurance exchange would ever be deemed to have `issued' a policy...."
The next question is whether Lloyd's Market is an "insurance exchange." The term "insurance exchange" is not defined in either the Act or the Surplus Lines Law, N.J.S.A. 17:22-6.40 to -6.67. In such a case, in order to ascertain legislative intent, we may look to extrinsic evidence, including legislative history and committee reports. Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001). The Assembly Insurance Committee Statement to Senate Bill No. 2439 states in part:

No [insurance] exchange would be permitted to be a member of the New Jersey Surplus Lines Insurance Guaranty Fund created pursuant to P.L.1984, c. 101 (C. 17:22-6.70 et seq.).
Insurance exchanges have been established in three states, Florida, Illinois, and New York. Exchanges operate in a similar manner to the Lloyd's exchange in London. The exchange is composed of individual syndicates which write various lines of business. The syndicates are composed of underwriting members *150 and broker members which place the business. Syndicates are made up of a managing partner and other partners who can be insurers or individuals. The exchanges are authorized by statute and have their own underwriting rules and methods of operation.

[Emphasis added.]
This Statement leaves little doubt that the Legislature intended that Lloyd's would not be eligible to participate as a member of the Fund.
Further, the nature and structure of Lloyd's was concisely described by us in Diamond Shamrock Chem. Co. v. Aetna Cas. & Sur. Co., 258 N.J.Super. 167, 189-90, 609 A.2d 440 (App.Div.1992), certif. denied, 134 N.J. 481, 634 A.2d 528 (1993). See also Louis A. Chiafullo, The Maelstrom at Lloyd's of London: Is It Sink or Swim for Policyholders?, 26 Seton Hall L.Rev. 1392, 1396-97 (1996). Suffice it to say that, if you compare that description with the Assembly Committee's description, it is clear that Lloyd's has all the attributes of an insurance exchange as envisioned by the Legislature.
We conclude that, since the subject policy was issued by an insurance exchange, the Fund had no obligation to pay the statutory benefits to plaintiff.
Affirmed.